**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-01154-CMA-BNB

GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION,

      Plaintiff,

v.

DONWIN, LLC,

      Defendant.

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
ON DECLARATORY JUDGMENT CLAIM**

---

      This matter is before the Court on Plaintiff GE Commercial Distribution Finance Corporation's ("CDFC") Combined Motion for a Temporary Restraining Order and Preliminary Injunction to Enforce its Rights under the Federal Arbitration Act and for Summary Judgment on its Declaratory Judgment Claims.  (Doc. # 11.)  For the following reasons, the Motion is granted in part to the extent it seeks summary judgment and denied in part as moot to the extent it seeks a preliminary injunction.

## I.  <u>PROCEDURAL HISTORY</u>

      Plaintiff initiated this action on April 29, 2011, when it filed a Complaint for Declaratory Judgment.  (Doc. # 1.)  This action arises from a dispute between the parties concerning which of two contractual agreements controls the manner by which

the underlying arbitration proceeds, including how a panel of arbitrators will be selected, where the arbitration will occur, and whether the parties may engage in discovery.

In the instant Motion, Plaintiff seeks a temporary restraining order and a preliminary injunction to maintain the status quo and halt all activities in a currently-pending arbitration in Florida, American Arbitration Association ("AAA") Case No. 32 148 Y 00846 10 ("Florida Arbitration"), until the Court has resolved the issue of the competing contracts.  On June 9, 2011, this Court held a hearing in connection with the request for a temporary restraining order ("June 9 Hearing").  (Doc. # 16.)  After hearing argument from both sides, the Court imposed a temporary restraint on the Florida Arbitration proceedings.  Additionally, the Court directed the parties to submit further briefing in connection with Plaintiff's Motion for Summary Judgment.  In compliance with the Court Order, Defendant Donwin, LLC filed its Response brief on June 16, 2011 (Doc. # 18), and Plaintiff filed its Reply on June 21, 2011 (Doc. # 22.)

## II.  **FACTUAL BACKGROUND**

### A.    **THE VARIOUS AGREEMENTS**

Plaintiff CDFC is a commercial lender doing business as Capital Solutions in the home products industry.  (Doc. # 1 at 1.)  Defendant DonWin, LLC is a wholesale General Electric ("GE") appliance dealer.[1]  (Doc. # 11-4 at 1.)  In the 1990's, the parties

---

[1]   DonWin sells GE appliances to its subsidiaries, GCF Holdings, LLC ("GCF"), DCE New Mexico, LLC ("DCE") and Riverview Ventures, Inc. ("Riverview").  Defendant's subsidiaries are currently in bankruptcy in the United States Bankruptcy Court, Middle District of Florida. (Doc. # 11-4, ¶¶ 3, 5.)

started doing business together via a series of security agreements, through which

Defendant could obtain floor plan financing from Plaintiff to purchase appliance

inventory under certain terms and conditions.  Those agreements included a 1994

Security Agreement and a 2007 Security Agreement (collectively, the "Old Security

Documents").

On July 1, 2009, the parties entered into two new agreements, after Defendant

amassed more than $5 million in past due principal and interest payments under the Old

Security Documents.  The two new agreements were a Forbearance Agreement (Doc. #

11-1) and an Inventory Finance Agreement ("IFA") (Doc. # 11-2.)  The Forbearance

Agreement concerns Plaintiff's ability to take legal action in connection with Defendant's

past-due debt.  Additionally, Plaintiff agreed to provide "a line of credit equal to [the

DonWin Companies'] current outstanding principal balance, net of the [old amounts

owed] plus One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00) to

be allocated as the parties may agree."  (Doc. # 11-1, ¶ (B)(6).) Further, the parties

agreed that they would enter into a new  "Security Document," (*Id.*, ¶ (B)(3)), which

document became the Inventory Finance Agreement ("IFA").

The IFA governs "all indebtedness and obligations of any nature whatsoever . . .

whether such indebtedness or other obligations arise under this Agreement or any other

existing or future agreement between or among any one or more Dealers, Lender

and/or a Lender Affiliate or otherwise, and whether for principal, interest, fees,

expenses, indemnification obligations or otherwise, and whether such indebtedness

3

or other obligations are existing, future, direct, indirect, acquired, contractual,

noncontractual, joint and/or several fixed, contingent or otherwise." (Doc. # 11-2,

¶ 3(c).)  Additionally, the IFA sets forth terms and conditions that govern the extension

of credit.  (*Id.*, ¶¶ 2-4, 8.)

The **Forbearance Agreement**, dated July 1, 2009, contains the following

arbitration provision:

> L.     <u>Binding Arbitration/Jury Waiver</u>.  This Agreement is subject to the binding
>        arbitration provisions **contained in the Security Documents**, and
>        Personal Guaranties as applicable to the parties hereto.

(Doc. # 11-1 at 7, ¶ L) (emphasis added).

In pertinent part, the **Old Security Documents** contain the following arbitration

provision:

> We agree that, at your option, any claim or dispute at any time arising
> under or related to this Agreement, the supplements, the other
> agreements mentioned in or related to this Agreement, or in any way
> pertaining to the financing of our inventory, whether in law or in equity,
> shall be submitted to arbitration **in accordance with the rules of the
> American Arbitration Association then prevailing**. Any decision
> rendered in any arbitration proceeding shall be final and binding upon
> the parties and judgment may be entered on such decision in any court
> of competent jurisdiction. Notwithstanding the foregoing, to the extent
> permitted by applicable law, you may engage in self help and offset
> remedies and may seek remedies through the courts including, without
> limitation, injunctive relief and other remedies to protect your claimed
> interest in any collateral pending entry of an arbitration award or to enforce
> the award, in addition, and without prejudice, to the exercise of your option
> to arbitrate. You and we agree that where allowable by law any cause of
> action related directly or indirectly to this Agreement, the supplements or
> any other agreement or dispute between us and you relating to inventory
> financing shall be commenced within two years from the date the cause of
> action accrues or shall be barred forever.

(1994 Security Agreement at Doc. #1-2 at 5, ¶ 16; 2007 Security Agreement at Doc.

# 1-3 at 5, ¶ 16) (emphasis added).

The **Inventory Finance Agreement ("IFA")**, dated July 1, 2009, also contains

an arbitration provision, which states in pertinent part:

(a)  <u>Arbitrable Claims</u>.  Except as otherwise specified below, all actions, disputes, claims and controversies under common law, statutory law or in equity of any type or nature whatsoever, whether arising before or after the date of this Agreement, and whether directly or indirectly relating to: (a) **this Agreement** and/or any amendments and addenda thereto, or the breach, invalidity or termination hereof; (b) **any previous or subsequent agreement between Lender and any one or more Dealers** . . . will be subject to and resolved by binding arbitration . . . .

(b)  <u>Administrative Body</u>.  All arbitration hereunder will be conducted in accordance with the Commercial Arbitration **Rules of either: (a) The American Arbitration Association** ("AAA"); or (b) United States Arbitration & Mediation ("USA&M").  The party first filing an arbitration claim shall designate which arbitration forum and rules are to be applied for all disputes between the parties . . . .  All arbitrator(s) selected will be attorneys with at least five (5) years secured transactions experience.  A panel of three arbitrators shall hear all claims exceeding One Million Dollars ($1,000,000), exclusive of interest, costs and attorneys' fees.  The arbitrator(s) will decide if any inconsistency exists between the rules of the applicable arbitral forum and the arbitration provisions contained herein.  If such inconsistency exists, the arbitration provisions contained herein will control and supersede such rules.  The arbitrator shall follow the terms of this Agreement and the applicable law . . . .

(c)  <u>Hearings</u>.  Each party hereby consents to a documentary hearing for all arbitration claims by submitting the dispute to the arbitrator(s) by written briefs and affidavits, along with relevant documents.  However, arbitration claims will be submitted by way of an oral hearing if any party requests an oral hearing within forty (40) days after service of the claim and that party remits the appropriate deposit for fees and arbitrator compensation within ten (10) days of making the request . . . .  The site of all **<u>oral</u>** arbitration hearings will be in the Division of the Federal Judicial District in which the designated arbitration association maintains a regional office that is closest to the Dealer.

(d)     Discovery  . . . Under no circumstances will the use of interroga-tories, requests for admission, requests for the production of documents or the taking of depositions be permitted.

* * *

(i)     Limitations.  Any arbitration proceeding must be instituted: (a) with respect to any Dispute for the collection of any debt owed by either party to the other, within two (2) years after the date  the last payment by or on behalf of the payor was received and applied in respect of such debt by the payee; and (b) with respect to any other Dispute, within two (2) years after the date giving rise thereto occurred, whether or not any damage was sustained or capable of ascertainment or either party knew of such incident.  Failure to institute an arbitration proceeding within such period will constitute an absolute bar and waiver to the institution of any pro-ceeding, whether arbitration or a court proceeding, with respect to such Dispute . . . .

(IFA, Doc. # 11-2 at 7, ¶ 27) (emphasis added).

## B.    THE UNDERLYING ARBITRATION[2]

In December 2010, Defendant DonWin filed a Demand for Arbitration with the

AAA, alleging: (1) breach of the Forbearance Agreement; and (2) tortious interference

with business relationship.  Defendant seeks "loss of revenue that would have been

realized and generated," in the amount of $19,000,000, as a result of Plaintiff's failure to

fulfill its terms under the Agreement and Plaintiff's interference with a business

transaction and relationship between Defendant and another lender.  (Doc. # 11-4 at 1.)

In particular, Defendant complains of Plaintiff's failure to provide it with a $1,500,000

line of credit over Labor Day weekend in September 2009 and Plaintiff's reports to

---

[2]   In the underlying arbitration, the parties are reversed.  The instant Plaintiff is the respondent in the arbitration; Defendant DonWin is the claimant in the arbitration.  In the discussion of the arbitration, the parties will be identified in their capacities in the instant litigation.

another entity, General Electric Capital Corporation, that Defendant was a bad credit risk.  (Doc. # 11-4 at 5, ¶¶ 9-10, 12-14.)  As a result of GE's reports, General Electric Capital Corporation chose not to execute a repurchase agreement, which execution was a precondition of Defendant receiving credit from another lender, Applied Capital.  As a result of Defendant's inability to obtain a line of credit from either Plaintiff or Applied Capital, Defendant "is unable to operate its business operation" and its subsidiaries, namely, GCF, DCE, and Riverview, filed for bankruptcy.  (Doc. # 11-4, ¶ 16.)  In its Demand for Arbitration, Defendant requested that the Arbitration occur in Broward County, Florida.  (Doc. # 11-4 at 2.)

On April 15, 2011, in connection with the underlying arbitration proceedings, Defendant DonWin filed a response to Plaintiff's proposed hearing locale (*i.e.*, Denver). (Doc. # 11-6.)  DonWin asserted that its claims, as well as the hearing locale, "are governed by the Forbearance Agreement and the Security Agreements and not by the IFA[.]"  (Doc. # 11-6 at 3) ("DonWin's Objection to Hearing Locale").  In support, DonWin cited to paragraph J of the Forbearance Agreement, which states,

> This Agreement, the Security Documents, and the Personal Guaranties contain the entire agreement between and among CSHPI, Dealer and the Guarantors, as the case may be, with respect to the outstanding obligation owing by Dealer to CSHPI and the liabilities of the Guarantors to CSHPI.  **In the event of any inconsistency between this Agreement and the Security Documents, this Agreement shall control.**  Except as specifically amended hereby, **all other terms and conditions in the Security Documents and Personal Guaranties shall remain unchanged and in full force and effect**.

(Doc. # 11-1, ¶ J) (emphasis added).  DonWin also pointed to Paragraph L of the

Forbearance Agreement, which states that Forbearance Agreement is subject to the

arbitration provisions contained in the Security Documents and Personal Guaranties –

all of which are silent as to the hearing locale.  ("DonWin's Objection to Hearing Locale")

Doc. # 11-6 at 3).)  Accordingly, DonWin asserted that, "absent any explicit agreement,

a party may make a request for a hearing locale that it deems appropriate and

convenient." (*Id.* at 3.)  Additionally, DonWin pointed to AAA Commercial Arbitration

Rule 11,[3] which states that, where the parties disagree, the AAA shall have the power to

determine the locale of the arbitration hearing, which determination will be final and

binding. (*Id.* at 3-4.)

As a result of DonWin's response, on April 20, 2011, Plaintiff filed a Motion to

Stay the Arbitration Proceedings until such time that a court of competent jurisdiction

could decide which of the two conflicting arbitration provisions apply.

On May 13, 2011, the AAA informed the parties that, after consideration of their

contentions, the AAA "determined the hearings will be held in Hollywood, Florida," and

directed the parties to agree upon three arbitrators from an enclosed list of names within

a date certain. (Doc. # 11-10 at 2.)  Plaintiff complains that this list of arbitrators fails to

---

[3]   Although DonWin referred to Rule 11, this rule does not relate to the arbitration
hearing's locale; rather, Rule 10 is the operative rule.  Pursuant to Rule 10, "If any party
requests that the hearing be held in a specific locale and the other party files no objection
thereto within 15 days after notice of the request has been sent to it by the AAA, the locale
shall be the one requested.  If a party objects to the locale requested by the other party, the
AAA shall have the power to determine the locale, and its decision shall be final and binding."

satisfy the IFA's requirement under paragraph 27(b) that the selected arbitrators have at least five (5) years secured transactions experience.  (Doc. # 11 at 8.)

On May 19, 2011, to facilitate the parties' resolution of the instant dispute, the AAA granted the parties' request to extend the arbitrator selection deadline up to and including June 14, 2011.  (Doc. # 11-14.)

### III.  <u>STANDARD OF REVIEW</u>

"A motion to compel arbitration under the Federal Arbitration Act is governed by a standard similar to that governing motions for summary judgment."  *Stein v. Burt-Kuni One, LLC, d/b/a Burt-Kuni Honda*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (citing *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262 (D. Kan. 2003)).  Thus, in this case concerning competing arbitration provisions, Plaintiff, as the movant, must present evidence sufficient to demonstrate which of the competing enforceable arbitration agreements apply to the underlying dispute.[4]  If this is shown, the burden shifts to Defendant, the non-movant, "to raise a genuine issue of material fact . . . using evidence comparable to that identified in Fed. R. Civ. P. 56."  *Id.*  If Defendant "demonstrates a genuine issue of material fact, then a trial . . . is required."  *Id.* (citing 9 U.S.C. § 4; *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997)); *see also Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines, Inc., d/b/a Curves*, 320 F.3d 362 (2d Cir. 2003) (affirming district court's award of summary

---

[4]   No dispute exists as to the arbitrability of DonWin's claims for breach of the Forbearance Agreement.  The dispute before this Court is solely limited to whether the arbitration provision(s) of the Old Security Agreements applies or whether the arbitration provision of the new Security Agreement, namely the IFA, applies.

judgment where no genuine issues of material fact were presented regarding the existence of an enforceable arbitration agreement).

## IV.  ANALYSIS

### A.  THE COURT'S JURISDICTION TO CONSIDER THIS ISSUE

The parties dispute whether the Court has jurisdiction to decide which of the two competing arbitration provisions apply to the underlying dispute.

In support of its opposition to the Court's exercise of jurisdiction, Defendant points to Rule 7 of the AAA's Commercial Arbitration Rules, which Rules were incorporated into the Old Security Documents (and, consequently, the Forbearance Agreement) and the IFA by reference.  In pertinent part, Rule 7 states that "[t]he **arbitrator** shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (emphasis added).  However, the instant question of which two competing agreements or arbitration provisions applies is different from the existence, scope, or validity, of an arbitration agreement, especially where, as here, neither arbitration provision evidences a clear intent by the parties – beyond boilerplate language –  that an arbitrator should identify the prevailing arbitration provision.  *Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (stating that, pursuant to the Federal Arbitration Act, any issue concerning "the construction of the contract language itself" should be resolved by the arbitrator) (emphasis added); *Pikes Peak Nephrology Assocs., P.C. v. Total Renal Care, Inc.*, No. 09-cv-00928, at *1-2, *5-7 (D. Colo. Mar. 30, 2010)

10

(unpublished) (determining that the issue of the arbitration provisions' scope, including the various agreements' validity, were matters for arbitration where the agreements evidenced the parties' clear intent to arbitrate those issues)[5]; *Tech. Capital, LLC v. Richard*, No. 08-422, 2009 WL 1163498, at *5-6 (D. Me. 2009) (unpublished) (finding that by clear and unmistakable agreement, such as a stipulation, the parties altered the presumption that deciding between two conflicting arbitration provisions is a "gateway matter" for the court).

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

Which of two conflicting or competing arbitration provisions applies to a particular dispute is a "gateway matter" for the Court to decide, rather than a "procedural" matter for arbitrator to decide.  *See Tech. Capital, LLC v. Richard*, No. 08-422, 2009 WL 1163498, at *5 (D. Me. Apr. 15, 2009) (unpublished).  Courts "do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."  *E.E.O.C. v. Waffle House,*

---

[5]   Unlike the instant case, *Pikes Peak* did not involve a dispute as to which of multiple arbitration provisions applied.

11

*Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).  "Although the [Federal Arbitration Act] evidences a strong presumption in favor of arbitration as to the scope of arbitrable issues, that policy only comes into play after it is determined that the contracting parties have an enforceable arbitration clause . . . .  However, a party cannot be forced into an arbitration absent an agreement to arbitrate[.]" *Stephens v. TES Franchising*, No. 3:01cv2267, 2002 WL 1608281, at *3 (D. Conn. July 10, 2002) (unpublished) (internal citations and parenthetical explanations omitted) (analyzing competing arbitration provisions in a contract).

In the instant case, there is no dispute as to the existence of an enforceable agreement to arbitrate.  The problem is that more than one enforceable agreement to arbitrate purportedly exists.  Therefore, it would seem that, just as a party cannot be forced to arbitrate absent an agreement to arbitrate, Plaintiff cannot be forced to arbitrate a dispute in a manner or in a location counter to what it had contractually agreed.  Plaintiff instituted this action because of Defendant's alleged failure or refusal to arbitrate under the IFA's arbitration provision.  Thus, pursuant to 9 U.S.C. § 4, Plaintiff duly petitioned this Court for an order directing that the underlying arbitration proceed in the manner set forth in the IFA.

Accordingly, the Court upholds its prior determination at the June 9  Hearing that this matter is properly before it and that it has jurisdiction to decide which arbitration provision applies.

**B.    NO GENUINE ISSUE OF MATERIAL FACT THAT THE IFA'S ARBITRATION PROVISION CONTROLS**

Having fully reviewed the record before the Court, including the parties' briefs and attached exhibits, the Court finds that the IFA's arbitration provision controls, for the reasons discussed below.

As noted above, on July 1, 2009, the parties executed both the Forbearance Agreement <u>and</u> the IFA.  The Forbearance Agreement concerns Plaintiff's ability to take legal action in connection with Defendant's past-due debt, which debt is memorialized in the Old Security Documents.  Although the Forbearance Agreement contains a provision concerning Plaintiff's promise to provide "a line of credit equal to [the DonWin Companies'] current outstanding principal balance, net of the [old amounts owed] plus One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00) to be allocated as the parties may agree," the parties expressly agreed that they would enter into "a new Security Document."  (Forbearance Agreement, Doc. # 11-1, ¶¶ (B)(3), (B)(6)).  It is undisputed that the IFA is the "new Security Document," through which Defendant granted Plaintiff security interest in certain collateral for "all indebtedness and other obligations" "whether such indebtedness or other obligations are existing, future, direct, indirect, acquired, contractual, noncontractual, joint and/or several, fixed, contingent or otherwise."  (IFA, Doc. # 11-2, ¶ 3(c).)  Thus, by the plain meaning of the IFA's terms, Defendant's "obligations" under the "new Security Document," or the IFA, included the promised $1.5 million.  Thus, it would seem that the IFA's very detailed arbitration provision would apply to the underlying dispute concerning Plaintiff's purported failure to

13

extend a $1.5 million line of credit to Defendant. A closer review of the competing arbitration provisions reveals that this is so.

As noted above, the Forbearance Agreement's arbitration provision simply states that "[t]his Agreement is subject to the binding arbitration provisions contained in the Security Documents[.]" (Doc. # 11-1, ¶ L.) At the June 9 Hearing, Defendant averred that the IFA is not a security document "identified and referred to in the Forbearance Agreement." (June 9 Hearing Transcript, Doc. # 17 at 7:21-25.) However, this is entirely disingenuous; the Forbearance Agreement uses the term "Security Document" to refer to three separate agreements, including the IFA. Specifically, in the intro-ductory paragraph, the Forbearance Agreement collectively refers to the 1994 **and** 2007 Security Agreements as the "Security Documents." Then, in paragraph B(3), the Forbearance Agreement refers to a new security agreement (*i.e.*, the IFA) as a "Security Document." Thus, the IFA is a Security Document identified and referred to in the Forbearance Agreement; it is illogical to conclude otherwise.

Accordingly, because the IFA is a "Security Document" identified and referred to in the Forbearance Agreement, and the Forbearance Agreement "is subject to the binding arbitration provisions contained in the Security Documents," it follows that a dispute concerning the purported breach of the Forbearance Agreement is subject to the binding arbitration provisions contained in the IFA.

14

## V.  **CONCLUSION**

Accordingly, for the foregoing reasons, IT IS ORDERED THAT:

(1)     Plaintiff's combined Motion for TRO and Preliminary Injunction to Enforce

Its Rights Under the Federal Arbitration Act; and Motion for Summary

Judgment on Its Declaratory Judgment Claims (Doc. #11) is GRANTED

IN PART to the extent it seeks summary judgment, and DENIED IN PART

AS MOOT to the extent it seeks preliminary injunctive relief;

(2)     The parties are directed to arbitrate the underlying dispute according to

the binding arbitration provision set forth in the Inventory Financing

Agreement (Doc. # 11-2, ¶ 27);

(3)     The temporarily imposed stay on the underlying arbitration proceedings,

American Arbitration Association Case No. 32 148 Y 00846 10 is lifted;

(4)     Plaintiff is permitted to submit a motion and supporting documentation

for attorneys' fees and costs; and

(5)     This case is DISMISSED WITH PREJUDICE.

DATED:  June __24__, 2011

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge